## JOHNSON *alias* OVERTON *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 740. Submitted December 6, 1894. — Decided March 25, 1895.

At the request of the defendant, in a murder case, the court instructed the jury that where the evidence showed that the defendant did not commit the actual killing, and it was uncertain whether he did participate in it, the jury might regard the absence of any proof of motive for the killing in finding their verdict; but the court further added that the absence or presence of motive is not a necessary requisite to enable the jury to find

the guilt of a party, because it is frequently impossible for the government to find a motive. *Held*, that, in thus qualifying the instruction the judge committed no error.

The accused was a witness in his own behalf. The court instructed the jury: "The defendant goes upon the stand before you and he makes his statement; tells his story. Above all things, in-a case of this kind you are to see whether that statement is corroborated substantially and reliably by the proven facts; if so, it is strengthened to the extent of its corroboration. If it is not strengthened in that way you are to weigh it by its own inherent truthfulness, its own inherent proving power that may belong to it." *Held*, that, taken in connection with the rest of the charge, there was no error in this.

Though the examination of the evidence leaves on this court the impression that there was reasonable doubt of the guilt of the accused, the verdict of the jury to the contrary and the action of the court below in overruling a motion for a new trial shows that the trial court was satisfied with the verdict, and, there being no error in the rulings, it is not disturbed.

At the August term, 1893, of the Circuit Court of the United States for the Western District of Arkansas, an indictment was found against Willie Johnson, alias Willie Overton, and Sam Woodard, charging them with the murder of one Sherman Russell, by shooting him with a gun.

On the presentment of the indictment in open court the defendant Willie Johnson, alias Willie Overton, pleaded not guilty to the same. The record does not show whether Sam Woodard pleaded to the indictment, nor does it show what became of him. Subsequently a jury was selected, empanelled, and sworn, and Johnson was put upon his trial, which resulted in a verdict of guilty as charged. A motion for a new trial was made and overruled, and on the 4th day of May, 1894, sentence of death by hanging was pronounced against the said defendant, and a writ of error was allowed to this court.

The record discloses a number of exceptions taken on behalf of the defendant during the course of the trial, which were set forth in a bill of exceptions signed by the judge, and which form the subject of the assignments of error. The following quotations therefrom show fully the character and scope of the questions presented :

"1st. It was error of the court to charge the jury as follows: 'Now a word further as to what is meant by this idea

of constructive presence. I have already told you that the test is if a man is so near to the place, no matter how far in feet or yards he may be away, if from the circumstances and from the character of the act done and the way it is done he is so near to where it is actually done as to be able to render assistance or to contribute to the production of that act, and he is there actually to do so, or is there ready to do so wilfully, and intentionally present in pursuance of a previous agreement, and he confederated to render aid and assistance, he is then present in the law. As an illustration take the case decided in Nevada, where the man was 30 odd miles away from the place where a stage was robbed; he built a fire on the top of a mountain to signal to his confederates the approach of the stage, they being down in the valley waiting to rob it. He was arrested as a principal in that crime, although as a matter of fact at the time of the robbery he was 32 miles away, or 30 odd miles away, but the law said he was present, because the test of the law as to what is meant by presence is fully satisfied, because the proof showed that he was able to render assistance that looked toward the completion of it — towards the execution of it. Another case: If a man goes to a store kept in the country and decoys away the clerk who slept in the store, decoys him to go to a dance some miles distant from the store, and detained him at the dance while his confederate robbed the store.'

" 2d. It was error to charge the jury as follows: 'If the presence of the defendant in this case at the place where the proof shows he was, was by previous agreement or concert with Sam Woodard, and it was the purpose on his part to assist, aid, or abet the killing of Sherman Russell, and he was there wilfully and knowingly for the purpose, if it should be necessary, of assisting Sam Woodard in killing Sherman Russell, and the knowledge on the part of Woodard of the presence of the defendant at the place where he was for the purpose of assisting him in the killing of Sherman Russell emboldened his purpose and encouraged his heart, or afforded him hope or confidence in his enterprise, or spurred on his mind to do the act, or nerved or strengthened his arm

to fire the pistol shot, then the defendant would be present aiding and abbetting the killing. He may not have done any actual physical act, but if his relation to the act was of the character that I have just named, the relation was a criminal relation upon his part; it was a relation that sprung out of a preconceived design between Woodard and defendant to take the life of Sherman Russell, and if such a presence for the purpose of aiding or assisting or abetting, should it become necessary, exerted a mental influence upon Woodard, so that he the more readily or quickly executed the act, the defendant would then be present at the crime whether he was really and actually at the place or whether he was so near to the place, as by the means I have described to exert an influence of that character upon the mind of Sam Woodard, he would then be present at the crime and he would be an actual participant in it. If at the time Sam Woodard shot and killed Sherman Russell the defendant was constructively present at the place of the killing, and he was at such place with the intent to knowingly and wilfully assist Sam Woodard in killing Russell, should it become necessary to consummate the deadly purpose, but that such aid was not necessary, as Woodard did the killing without such help, then such constructive presence with such purpose would be a legal presence and would make the defendant a participant in the killing.'

"3d. It was error to charge the jury as follows: 'If he is present actually or constructively at the time of the commission of the crime, and is so situated with reference to it, and while so situated wilfully and intentionally knowing the purpose of the man who strikes the deadly blow or fires the fatal ball, and while so situated he then wilfully and intentionally aids either by doing some physical act or by being present at the place by reason of a previous agreement, and the very fact of that presence exerts an influence upon the mind of the party who fires the fatal shot, showing that he more readily or quickly does the act, then he is present at the place and is actually an aider and abettor and is a principal in the crime.'

"8th. It was error to charge the jury as follows: 'The

defendant goes upon the stand before you and he makes his statement; tells his story. Above all things, in a case of this kind you are to see whether that statement is corroborated substantially and reliably by the proven facts; if so, it is strengthened to the extent of its corroboration. If it is not strengthened in that way, you are to weigh it by its own inherent truthfulness, its own inherent proving power that may belong to it.'

"11th. It was error to give the following charge: 'The court charges you that in case of circumstantial evidence motive on the part of the defendant is an important element to be by the jury considered, and where the evidence clearly shows that the defendant had no motive to do the killing, when it is not certain he did the killing, then they may look to such absence of motive for the killing in finding their verdict. The court has already told you that the absence or presence of motive is not a necessary requisite to enable you to find the guilt of a party, because it is frequently impossible for the government or accusing power to find a motive; it is impossible for the jury to find it; it is so hidden, it is so trifling, it is so insignificant that it is apt to be overlooked from its very hidden character, its very hidden nature; it is something often that is so unfathomable that it cannot be found. Do not understand that by the giving of this instruction that proof showing the existence of motive is any requisite to enable you to find the defendant guilty.'"

*Mr. Assistant Attorney General Whitney* for defendants in error.

No appearance for plaintiff in error.

Mr. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The assignments of error question the correctness of the instructions given to the jury, first, on the subject of a constructive, as distinguished from an actual, presence at the

scene of the murder; secondly, as to the effect to be given to the absence of proof of motive; and, thirdly, as to the weight to be attached to the testimony of the defendant in his own behalf.

Although the indictment charged Johnson with actual presence and participation in the felonious act, yet the evidence disclosed that the fatal wound was inflicted by Woodard, and that Johnson, though near by, did not show himself till after the murder had been accomplished. This state of facts rendered it proper for the court to instruct the jury as to the legal effect of such evidence. This it did, at some length, with illustrations drawn from well-known cases. We are unable to see any misstatement of the law in the instructions given in this respect.

There was nothing in the evidence disclosing previous hostility to the deceased on the part of Johnson, or any reason or motive for the murderous attack. Thereupon the defendant's counsel asked an instruction that where the evidence shows that the defendant did not commit the actual killing, and when it is uncertain whether he did participate in it, then the jury may regard the absence of any proof of motive for the killing in finding their verdict. This instruction the court gave, but added to it the observation that the absence or presence of motive is not a necessary requisite to enable the jury to find the guilt of a party, because it is frequently impossible for the government to find a motive.

In thus qualifying the instruction the learned judge committed no error. The jury were, in effect, told that they had right to consider the absence of any proof of motive, but that such proof was not essential to enable them to convict.

Complaint is made of the instruction as to the weight to be given to the defendant's personal testimony. That instruction was in the following terms: "The defendant goes upon the stand before you and he makes his statement; tells his story. Above all things in a case of this kind you are to see whether that statement is corroborated substantially and reliably by the proven facts; if so, it is strengthened to the extent of its corroboration. If it is not strengthened in that way you are

to weigh it by its own inherent truthfulness, its own inherent proving power that may belong to it."

This instruction must be taken in connection with about a page of the charge which immediately preceded it, in which the court laid down certain general rules for weighing the evidence of any witness, naming among them his bearing and conduct in the presence of the jury, his manner in giving his testimony, the character of the story told by him, its harmony or contradiction with other testimony, the opportunities the witness had for knowing the facts of which he testifies, and the motive, by reason of interest or feeling, which may influence him, saying in conclusion that "if the interest is a very great one, if it is a very large one, it is more apt that he would be swayed — it might be unconsciously — away from the truth than if such interest did not confront him. You are simply to weigh that evidence in connection with the statements of the other witnesses in the case, whether it is the defendant or anybody else." After these general observations follows the particular language which is objected to, but in view of that which preceded, it cannot be said that, by it, the defendant was deprived of any advantage to which he was justly entitled in having his personal statement considered by the jury. If such statement was corroborated by facts otherwise proved it was thereby strengthened; if it was not so corroborated it was still to be considered in and of itself, and in the light of "its own inherent proving power." *Reagan* v. *United States ante,* 301.

The learned judge has included in the bill of exceptions the evidence in the case, and we have carefully read it in connection with the portions of the charge and instructions excepted to.

The impression has been made upon us, by our examination of the evidence, that there was room for a reasonable doubt of the defendant's guilt. But the jury that found him guilty saw and heard the witnesses, and we must infer from the conduct of the court in overruling the motion for a new trial that it was satisfied with the verdict; and as we have found no error in the rulings of the court, the judgment in the case is

*Affirmed.*