UNITED STATES of America,
Plaintiff-Appellee,

v.

Alandus Eugene MARSHALL, Defendant-
Appellant.

No. 12426.

United States Court of Appeals
Seventh Circuit.

April 23, 1959.

Lester Shapiro, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and PARKINSON and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Defendant Alandus Eugene Marshall was tried to a jury on indictment for the crime of rape in violation of Title 18, U.S.C. § 2031 and for feloniously taking money by force, violence, and intimidation, in violation of Title 18, U.S.C. § 2111, both offenses arising out of the same incident.

The jury found the defendant guilty as charged. Defendant's motions for judgment of acquittal at the end of the government's case, and at the close of all evidence; for new trial; and in arrest of judgment were overruled.

The District Judge committed defendant, who was 16 years old, to the custody of the Attorney General pursuant to the Federal Youth Corrections Act, Title 18, U.S.C. § 5005 et seq.

The evidence adduced at the trial showed that on April 1, 1958, the date of the alleged offenses, defendant and the prosecuting witness, Rebecca Anne Woods, were both residing in apartments located on the same floor of Building No. 31, at the Naval Air Station, Glenview, Illinois, a federal reservation. Defendant's father and Rebecca Anne Woods' husband were both in the U. S. Naval Service. There are between twenty-two and twenty-four apartments in the building. Mrs. Woods had been living there for about five months on April 1, 1958. She testified that she did not know defendant who had lived there since January 1958.

Mrs. Woods testified that when she returned from the grocery store, at about 11:00 A.M. on April 1, 1958, and opened the unlocked door of her apartment, she was pulled inside by the defendant, who, pointing a knife at her, told her not to scream, to place her groceries on the floor, and to disrobe. She testified further that while threatening her with the knife, defendant forcibly disrobed her and had carnal knowledge of her. She said that while this was happening, she and defendant both heard someone coming down the hall, that she told defendant it was probably her husband, whereupon defendant rose, took some money from her grocery bag, keeping $1.00 and throwing the rest on the bed; that he placed the knife in his belt, waited at the door while footsteps were heard to pass the door, and then left. Mrs. Woods testified that she then made several telephone calls, tried in vain to reach her husband, but did reach a friend who called the government security police. About an hour later, the defendant was placed outside of the building where Mrs. Woods could see him from the windows of her apartment. She failed to identify him at that time. She described the clothing, of the man she saw, as different from that worn by the defendant when he was in her apartment. In both instances, she said he wore a plaid shirt and an "Ivy League" cap, but she testified that the man outside her window wore darker trousers and a darker colored "Ivy League" cap. She also testified that when she had seen defendant standing inside the rear door of her building earlier that morning, he was wearing a plaid shirt and an "Ivy League" cap. She said that when she looked out her windows at him and failed to identify him, the windows were streaked, as though wet and unclear. She did, however, identify defendant later that day, picking him out of four men in a line-up, and she identified him at the trial.

The Master at Arms attached to the security department, James Edward Walsh, Sr., testified that he visited Mrs. Woods' apartment about 11:40 A.M. April 1, 1958, where he found her "red-eyed", nervous, and "biting her nails"; that he made telephone calls to the Glenview Police Department and the Security Office, that he went to the Security Office where he found defendant, whom he brought back to the sidewalk in front of Building 31, at about 11:55 A.M. He then went into the apartment and asked Mrs. Woods to look at defendant, who was then standing approximately 59 feet from her. Walsh said that he had no difficulty in seeing defendant through the windows. His description of defend-

ant's clothing at that time coincides with that given by Mrs. Woods.

James W. Carter, Seaman, attached to the Naval Air Station, testified that he had seen the defendant on the evening of March 31, 1958, wearing a leather coat with fringe and a white "Ivy League" hat.

Corporal William David LaBrosse, of the U. S. Marine Corps, who lived in the same building as defendant and Mrs. Woods, testified that shortly after 11:00 A.M., April 1, 1958, he was walking toward his apartment, when he heard a door click, turned to look, and saw defendant standing outside the door to the Woods' apartment with his hand on the door; that as LaBrosse watched, defendant hurriedly went toward and through the laundry room door, out of LaBrosse's view. LaBrosse described defendant as wearing clothing similar to that described by Mrs. Woods as worn by defendant when he was in her apartment. He testified further that he had seen the defendant earlier that morning, about 9:15 or 9:25 A.M. in the same clothing.

Defendant's mother testified that defendant had not left his apartment on April 1, until between 11:30 and 11:40 A.M.; that he returned shortly, met her in the hallway to give her the mail, and then set out again to catch the 12:15 P.M. bus to Evanston.

Defendant himself testified to the same general effect. He said further that he was asleep until between 10:30 and 11:00 A.M., and denied ever having been in Mrs. Woods' apartment or owning some of the items of clothing described by government witnesses.

Several witnesses testified to defendant's good general reputation.

In rebuttal, the government called Harvey Johnson, who gave evidence of interviews, in the Naval Air Station Security Office, with defendant and defendant's mother, at 8:50 and 9:00 P.M. respectively, on April 1, 1958. Johnson refreshed his recollection by reference to shorthand notes made during the interviews. He testified that defendant had

said he got out of bed April 1, at approximately 10:00 or 10:30 A.M., and that defendant's mother had said defendant left his own apartment that day at 11:00 A.M.

The questions presented for our consideration are (1) was defendant's motion for judgment of acquittal or for a new trial (based on alleged lack of substantial evidence to prove defendant guilty beyond a reasonable doubt) properly denied by the Trial Court, and (2) did the Trial Court err in instructing the jury?

■■ In deciding whether the Trial Court properly denied defendant's motions aforesaid, we must view the evidence in the light most favorable to the government and must also resolve any conflicts in the evidence in favor of the government. United States v. Yeoman-Henderson, Inc., 7 Cir., 1952, 193 F.2d 867, 869; United States v. Thayer, 7 Cir., 1954, 209 F.2d 534, 538. It is not for us to determine the credibility of the witnesses who were heard and viewed by the Trial Judge and the jury. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

■ In considering the evidence most favorable to the verdict and such reasonable inferences as the jury may have drawn therefrom, we must conclude that the defendant's motions were properly denied.

■ Defendant points out possible inconsistencies in the testimony of various witnesses, argues that Mrs. Woods' own conduct as described in her evidence, was unreasonable under the circumstances, and suggests that a mistake in identification has been made. Defendant relies on Illinois rules of evidence, which were not binding on the District Court. Rule 26, Federal Rules of Criminal Procedure, 18 U.S.C.A.; Lutwak v. United States, 1953, 344 U.S. 604, 73 S.Ct. 481, 97 L. Ed. 593; United States v. Bucur, 7 Cir., 1952, 194 F.2d 297, 305; and Packineau v. United States, 8 Cir., 1953, 202 F.2d 681, 686–687, where, as here, the Court

was trying a charge of rape allegedly committed on a federal reservation.

There is a question as to whether or not objections were timely made at the conclusion of the Trial Court's charge to the jury. However, assuming, for the sake of argument, that objections were properly interposed, it is defendant's contention that the Trial Court erred in singling out defendant as a witness and disparaging his testimony; in instructing the jury that it might disregard the testimony of a witness who had wilfully testified falsely to any matter material to the issues, without defining those material issues; in instructing the jury with reference to circumstantial evidence where the only evidence in the case is asserted to have been direct evidence; and in refusing defendant's suggested instruction to consider defendant in the jury's deliberations, as if he were a white man, there being no distinction in principle with respect to color.

Defendant argues that his testimony alone was singled out and disparaged when the Trial Court instructed the jury that:

1. "The Court further instructs the jury, that you are the sole judges of the credibility and the weight which is to be given to the testimony of the witnesses who have testified upon this trial. In weighing the testimony of each witness, you should give it careful scrutiny; consider all the circumstances under which the witness testifies; his or her demeanor on the stand; the relation which he or she bears to the Government or to the defendant; the manner in which the witness might be affected by the verdict; the extent to which the witnesses are corroborated or contradicted by other credible evidence; and, in short, any circumstances that tend to throw light upon his credibility. And, in applying those tests which I have just given you, you are to determine the weight which is to be given to the testimony of each witness.

"The Court further instructs the jury, you have a right to weigh and examine the evidence closely and carefully in the light of the common knowledge and experience of mankind, and you have the right to take into consideration the common knowledge and experience of mankind in determining whether the evi-

"The Court further instructs the jury, that the defendant has testified on the witness stand. You have heard his testimony. The fact that he is the defendant does not mean that he cannot tell the truth. You should weigh his testimony by the same rules that you would weigh the testimony of any other witness. But you should keep in mind that he is the defendant in the case and, of course, has an interest in the outcome of this trial."

■ We cannot agree. The Court similarly instructed the jury to consider possible interest in the outcome of the case in weighing the testimony of all witnesses.[1] Reagan v. United States, 1895, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709; Johnson v. United States, 1895, 157 U.S. 320, 15 S.Ct. 614, 39 L.Ed. 717.

■ Review of the instructions as a whole shows that the jury was fairly charged as to the law applicable in this case. The elements of the offenses involved were clearly defined.[2]

dence is reasonable or unreasonable, or probable or improbable, and in determining what weight it is entitled to receive.

"The Court further instructs the jury, if you believe from the evidence that any witness in this case has knowingly and wilfully testified falsely on this trial to any matter material to the issues in this case, you are at liberty to disregard the entire testimony of such witness, except insofar as it has been corroborated, if you find it has been corroborated, by other credible evidence or by facts and circumstances proven at the trial."

2. "Count two of the indictment charges that on or about April 1, 1958 at the United States Naval Air Station, Glenview, Illinois, within the special territorial jurisdiction of the United States in the Northern District of Illinois, Eastern Division, the defendant, Alandus Eugene Marshall, did unlawfully, wilfully, knowingly and feloniously rape one Becky Anne Woods.

"Count two of the indictment is brought under a statute which reads in pertinent part as follows:

" 'Whoever, within the special * * * territorial jurisdiction of the United

■ As the government's case did include evidence of a circumstantial nature, for example, the testimony of Corporal LaBrosse, the Trial Court properly instructed the jury respecting circumstantial evidence.

■ It further appears to this Court that the subject of color prejudice was better suited to inquiry upon *voir dire*. The record does not show that it was raised at that time. If the Trial Court is charged with so instructing a jury in a case of this kind, may it not also be called upon to instruct on any other fact of race, creed, color or individual physical peculiarity? We cannot consider refusal to give the requested instruction [3] prejudicial error.

The judgment of the Court below is affirmed.

DUFFY, Chief Judge (dissenting).

Upon the whole record, I am convinced there is a lack of substantial evidence to prove the defendant guilty beyond a reasonable doubt.

The story of the complaining witness is not worthy of belief. She claims she came back to her apartment with some groceries, and that an arm reached

States, commits rape * * *' shall be punished.

"The jury is instructed that if they find beyond a reasonable doubt that the premises or land upon which the crimes, if any crimes there be, were committed were acquired for the use of the United States and that the Secretary of the Navy or Acting Secretary of the Navy accepted jurisdiction of this land and filed notice of such acceptance on behalf of the United States with the Governor of the State of Illinois prior to the date the alleged crimes occurred, such land is within the special territorial jurisdiction of the United States.

"The jury is instructed that rape is the carnal knowledge of a woman forcibly and without her consent.

"Carnal knowledge means penetration of the sexual organ of the female by the sexual organ of the male and the slightest penetration is sufficient.

"The Court instructs the jury that the Government has the burden of proving penetration of the private parts of the complaining witness, Rebecca Woods, forcibly and against her will, beyond all reasonable doubt. And the Court further instructs the jury that the Government must prove beyond all reasonable doubt that the defendant, and nobody else, in fact made this forcible penetration, if any, before a guilty verdict can be justified.

"The jury is instructed that carnal knowledge of a female with her consent is not rape; however, there is no consent if the resistance of the woman is overcome by threats which put the woman in fear of death or grave bodily harm.

"The jury is instructed that count three of the indictment charges that on or about April 1, 1958, at the United States Naval Air Station, Glenview, Illinois, within the special territorial jurisdiction of the United States in the Northern District of Illinois, Eastern Division, the defendant, Alandus Eugene Marshall, did unlawfully, wilfully, knowingly and feloniously take from the person of one Becky Anne Woods, a thing of value, to wit: money, by force, violence and intimidation.

"Count three of the indictment is brought under a statute of the United States which reads in pertinent part as follows:

" 'Whoever, within the special * * * territorial jurisdiction of the United States, by force and violence, or by intimidation, takes from the person or presence of another anything of value, shall be * * *' punished.

"You are instructed that in the statute I have just read to you there is no minimum value set on the thing taken.

"The Court instructs the jury that it is the burden of the government to prove the defendant guilty beyond all reasonable doubt before a guilty verdict can be signed; and the Court further instructs the jury that the defendant is not required to prove his innocence, but that the prosecution must prove the defendant's guilt beyond all reasonable doubt, or else he should be found not guilty.

"The Court further instructs the jury that it is necessary that the Government prove each and every element of the offenses charged and if you find that such proof does not exist as to any necessary element of any of the offenses charged, then the defendant should be found not guilty on such offense or offenses."

3. "It is the duty of the jury to consider the prisoner's case as if he were a white man, for the law is the same, there being no distinctions in its principles in respect to color."

around the door and forced her inside her apartment. She made no outcry. Defendant is a dark complexioned Negro while her husband is a light complexioned Negro. Defendant, sixteen years of age, lived on the same floor of the same building with the complaining witness, but it is apparent she did not recognize him at the time of the alleged assault.

During the assault, complaining witness testified they heard someone coming in the hall, and she said it was probably her husband returning, whereupon her assailant got up from the bed, took three dollars from the grocery bag she had brought in, asked her how much the fare was to the Loop and when she told him forty-five cents, he kept one dollar and threw the other two on the bed. She claims the assailant waited at the door until someone outside passed by and then left.

After locking the window, the complaining witness attempted to call two friends. Finally she called the office where her husband worked, but learned he was not there, and she then told Mrs. Brays that a man had been in her apartment, but made no mention of any assault. Mrs. Brays called Security and a Mr. Walsh responded.

Within an hour of the alleged assault defendant had been arrested and Walsh caused him to stand in front of the building where the complaining witness lived. He then asked her to look out the window to see if she could identify the man standing there. She stated defendant was not the man and a bit later said she was sure he was not the man. At the trial she attempted to excuse this lack of identification on the basis that the window was wet, but testimony showed it was "a dry, clear, sunny day." Her description of her assailant's clothes differed in marked respects from the clothing worn by defendant when arrested.

The record before us is not in satisfactory shape. There is a question of whether timely objections were made to certain instructions, and whether certain other instructions were given. I think in the interest of justice there should be a new trial.