UNITED STATES of America, Plaintiff-Appellee,

v.

Phillip C. JOHNSON, Defendant-Appellant.

No. 17960.

United States Court of Appeals, Seventh Circuit.

July 19, 1971.

Frank W. Oliver, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Allan E. Lapidus, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, MAJOR, Senior Circuit Judge, and KILEY, Circuit Judge.

KILEY, Circuit Judge.

Defendant Johnson was convicted,[1] by a jury, under counts III and IV of a four count indictment charging him with aiding and abetting Edward Chan-

---

[1]. On his plea of guilty, the principal Chanda was sentenced to three years on each of four counts, to run concurrently. Johnson, found guilty by the jury of aiding and abetting Chanda, was sentenced to five years on each two counts, to run consecutively. This is a shocking disparity in sentencing, with no reason given for the disparity. But the point is not argued by Johnson, and we are not disposed on this record to set aside Johnson's sentence as incorrect. We shall in this case presume the court had valid reasons for the disparate sentences and that Johnson's relatively severe punishment was not the price paid for exercising his right to trial by jury. *Cf.* United States v. Wiley, 267 F.2d 453, 456 (7th Cir. 1959).

da in embezzling $343,000 from Chanda's bank employer.[2] Johnson has appealed. We affirm.

Chanda worked for the Northern Trust Company from 1953 to 1968. In 1964 he began to gamble, giving money to defendant Johnson to place with bookmakers. In the beginning he bet about $100 per week.

In 1964 Chanda also began embezzling money from the bank's petty cash fund and depositing the money in Johnson's checking account in the bank to cover any losses he incurred in his betting. Johnson would then draw checks against his account to pay Chanda's losses.

As the losses grew in size, Chanda began to embezzle from customers' accounts, converting cash into cashier's checks which were made payable to Johnson and negotiated by him at the bank. In order to cover one $12,000 loss, Chanda—fearful that Johnson's appearances at the bank would arouse suspicion—arranged an account for Nick Gonsch, a mutual friend, under the pseudonym Consch. Chanda gave Gonsch a $12,000 bank check made out in Consch's name, told Gonsch to endorse it under the pseudonym, cashed the check for Gonsch, and gave the cash to Gonsch who gave it to Johnson awaiting outside. Thereafter the method of direct deposit of embezzled bank funds in Johnson's account and withdrawal by Johnson was used.

■ Johnson contends here that the government failed to prove specific intent, i. e., that he knew that Chanda was giving him embezzled funds for betting —an essential element of the offense. See United States v. Mullins, 355 F.2d 883, 886 (7th Cir. 1966), cert. denied, 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 540. On this contention we take the evidence favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Chanda pled guilty and testified at the Johnson trial. Johnson and Gonsch, among others, also testified.

Chanda and Johnson had been friends since grammar school days. In the period from July 1967 to May 1968 Chanda was betting $100,000 a week. He bet $4,896,000 in that period and lost about $380,000 of that amount. His salary at the time was between $7,600 and $8,400 annually, a fact of which Johnson was aware, and he paid Johnson between $600 and $1,000 a week for Johnson's services in placing the bets. In that period Johnson visited Chanda's $15,000 home and rode in his 1963 Ford. As the betting increased, Johnson stopped working at his store and devoted "24 hours" a day to placing Chanda's bets.

In 1964 Chanda told Johnson that he could withdraw money from the bank's petty cash fund and explained the method. Later, when Chanda suggested to Johnson that money to cover Chanda's gambling losses be put by Chanda into Johnson's checking account, Johnson asked "if this would create suspicion on the part of the people at the bank." Chanda also told Johnson in 1968, "Boy, I'm taking gas. I hope I look good in stripes."

When Gonsch was contacted by Johnson to cash the check at Chanda's bank, Johnson told him that this arrangement was necessary because "it wouldn't look good if he [Johnson] went to the bank again." When Gonsch asked why the name Consch was used on the check, Johnson "just laughed." And Johnson told agent Ver Steeg, after Chanda's arrest, that he had a "good idea" where the money came from because he knew that "Chanda personally did not have this amount of funds."

■ We are unimpressed with arguments made by Johnson to support his contention that no scienter is shown by the evidence. We consider facetious the argument that he was "completely in the dark as to what Chanda's financial situation" might be from time to time. Even assuming—as defendant urges— that the size of the losses does not necessarily indicate Johnson was aware of

2. 18 U.S.C. § 656.

**34**

the embezzlement in view of the magnitude of the total bets and Johnson's informal accounting method of adding up wins and losses on a daily basis, nevertheless Johnson's knowledge of Chanda's personal wealth and the statements made by him were sufficient to have permitted the jury to infer that he knew that Chanda was embezzling bank funds. Johnson's attempts to explain away these statements was proper argument for the jury, but the jury need not have believed him.

■ It was unnecessary for the government to prove Chanda directly told Johnson the money was being embezzled. The question is not whether Chanda made Johnson aware of the embezzlement. The question is what Johnson knew from the facts shown above. We hold that the jury could well find that Johnson knew the large amounts of money Chanda was depositing in Johnson's account for Chanda's bets must have been embezzled from the bank.

■ We see no merit in Johnson's claim that the district court erred in failing to instruct the jury in a meaningful way about the essential element of "specific intent to defraud the bank." The specific intent instruction given [3] is from the LaBuy Instruction Manual [4] and was approved by this court in United States v. Mullins, 355 F.2d 883, 887 (7th Cir. 1966), cert. denied, 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 540. This

instruction was not deficient because "abstract" when considered in the light of the concrete instruction given with respect to the "three essential elements" in the offense alleged against Johnson.[5] Nor are we persuaded that the instruction confused the jury so that it might have convicted Johnson for intending to violate "gambling laws." Any possible confusion was removed by the instruction with respect to the essential elements of the crime, noted above. The LaBuy instruction merely informed the jury of the meaning of "specific intent."

It is true that a juror requested further instruction as to "whether or not guilt could be indicated * * * just on the grounds that the defendant possibly was suspicious or questioned the source of the funds * * * but never took the time or trouble to put it completely out of his mind in an investigation." But we cannot attribute to the instruction what "confusion" the juror experienced.

The foreman, in aid of the juror who raised the point, requested the court to read "the charge following count four." The court did so without objection from defendant. In substance the part reread, as requested, told the jury that "knowingly" meant voluntarily and purposefully, not accidentally; that knowledge may be proven by defendant's conduct under all the circumstances, and "[n]o person can intentionally avoid

---

3. The instruction was as follows:

The crime charged in this case requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case (and from similar transactions).

4. Seventh Circuit Judicial Conference Committee on Jury Instructions, Jury Instructions in Federal Criminal Cases, § 406 (1965), also reported at 33 F.R.D. 553.

5. The instruction was as follows:

Three essential elements are required to be proved beyond a reasonable doubt in order to establish the offense of aiding and abetting with which Phillip Johnson is charged in each of the four counts of the indictment.

First: That there was a wilful misapplication of moneys or funds by Edward J. Chanda in the manner charged in each of the counts of the indictment;

Second: That Phillip C. Johnson did aid, abet, induce, counsel or procure Edward J. Chanda to misapply those moneys or funds, and;

Third: That Phillip C. Johnson did such act or acts knowingly and wilfully.

knowledge by closing his eyes to facts which should prompt him to investigate."

We think the juror's question does not depreciate the instruction. The part reread to the jury ought to have been understood by the jury when it was first read, i. e., that Johnson was not absolved of guilt if the facts showed that he put out of his mind any suspicion or question of how Chanda could be betting so much money.

 We see no merit in the contention that the court's rereading did not clarify the charge for the juror. The decision in United States v. Harris, 388 F.2d 373 (7th Cir. 1967), is inapposite since this court there found the instruction given to be inevitably confusing.

 Finally, on a related point, assuming, but not deciding, the court erred in stating, after the juror raised his question, that a "consensus of jurors is necessary for a request of clarification of the charge," the error in the light of the great weight of evidence against Johnson would certainly not compel reversal of his conviction. The court's statement was requested by defense counsel, who objected to any reading of the instruction, and any prejudicial effect was nullified by the court's rereading of the instruction at the foreman's request.

 There is no substance to Johnson's last contention that the indictment should have been dismissed as failing to allege facts sufficient to state the offense charged. Count III charged that Chanda embezzled $13,000 which he put in an account of "Consch" enabling a withdrawal to the use and benefit of Johnson, and that the latter wilfully and knowingly aided and abetted the disbursement; and count IV alleged Chanda's embezzlement, and deposit of $331,000 in an account in Johnson's name enabling the withdrawal of the money to the latter's use and benefit and that Johnson wilfully and knowingly

aided and abetted the disbursement. It was unnecessary to allege "how" Johnson aided and abetted as he contends or that he did so with intent to injure the bank. Coffin v. United States, 156 U.S. 432, 448, 15 S.Ct. 394, 39 L.Ed. 481 (1895); Phillips v. United States, 406 F.2d 599, 602 (10th Cir. 1969). See Benchwick v. United States, 297 F.2d 330, 332–333 (9th Cir. 1961). It was enough that the indictment charged Chanda's embezzlement of the money with intent to defraud the bank and Johnson's wilful and knowing aiding and abetting.

For the reasons given, the conviction is affirmed.