**UNITED STATES of America,
Appellee,**

v.

**Harry Dino WORD a/k/a Harry Dino
Hurd, Appellant.**

**No. 74–1681.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1975.

Decided July 7, 1975.

Certiorari Denied Nov. 3, 1975.
See 96 S.Ct. 290.

Philip M. Moomaw, Asst. Federal Public Defender, Springfield, Mo., for appellant.

Donald R. Cooley, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Appellant Harry Dino Word was convicted of armed robbery following a jury

trial in the United States District Court for the Western District of Missouri. Word, and a co-defendant who is not a party to this appeal, had been indicted under V.A.M.S. §§ 560.135 and 556.170 (1953), pursuant to the Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13. The crime was committed on the Fort Leonard Wood military reservation.[1]

Word does not challenge the sufficiency of the evidence to support his conviction, but asserts instead (1) that the trial judge committed prejudicial error in failing to grant Word's motion for a mistrial when it was determined that both alternate jurors had read newspaper articles containing prejudicial information about the occurrence which gave rise to his trial, (2) that the indictment under which he was charged failed to encompass the correct Missouri statute and (3) that the District Court lacked jurisdiction to sentence him under the Assimilative Crimes Act since the conduct charged constituted a federal criminal offense under 18 U.S.C. § 2111.[2] We affirm the judgment of conviction, but for the reasons stated herein vacate the sentence imposed and remand the case to the District Court for resentencing.

## I.

 During Word's trial, three articles appeared in local newspapers which made reference to murders associated with the robbery for which he was being tried. The District Court had previously recognized the prejudicial character of such information and had ruled that it could not be admitted at trial. Following the appearance of the third article, Word's counsel moved, in chambers, for a mistrial on the ground that Word could not get a fair trial. He stated that it seemed inconceivable to him that someone on the jury had not heard of the articles in some way. The government opposed the motion and the court reserved ruling. When the trial resumed, the court addressed the jury:

THE COURT: Ladies and gentlemen of the jury: At the start of this trial, I cautioned you not to read newspaper stories about this trial and listen to accounts on television and on radio.

Now, it has come to my attention that there was a lengthy story in last night's paper and a lengthy story in this morning's paper, both of which contained a number of—I don't know quite how to express it. The newspaper reporter has stated a number of facts which the newspaper seem to know about but that the district attorney's office and no law enforcement knows about and there isn't any evidence of it in this case, as conclusions.

1. 18 U.S.C. § 13 provides:
 *Laws of states adopted for areas within federal jurisdiction*
 Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, *although not made punishable by any enactment of Congress*, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment. [Emphasis added]
 18 U.S.C. § 7 provides in relevant part:
 *Special maritime and territorial jurisdiction of the United States defined*
 The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:

 \* \* \* \* \* \*

 (3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.
 Word was sentenced to life imprisonment by the District Court.

2. 18 U.S.C. § 2111 provides:
 *Special maritime and territorial jurisdiction*
 Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.

However, if you read those articles, if you gave them any credence at all, they would be prejudicial to this defendant.

I might assure all of you that this defendant is not charged with any other crime in federal court or state court, that this robbery charge is the charge he is being tried for—oh, I take that back, there is a charge of stealing this car that was referred to that belonged to one of the employees of this club. But that's not being prosecuted. But I say, these newspaper stories would be very, very prejudicial to the rights of this defendant.

Now, I want you all to be truthful about this matter. How many of you have read the story in last night's paper or this morning's paper? How many have read it? . . .

Only the two alternate jurors answered affirmatively and they both said they had not discussed the articles with any other member of the jury. The court then clarified the inquiry by telling the jury that the court's question referred to articles appearing in that morning's newspaper as well as the previous evening's, but no other responses were evoked. The court did not grant a mistrial.

Word contends that he was denied his Sixth Amendment right to be tried before an impartial jury by reason of the fact that his jurors may have read the prejudicial articles. He also charges that the District Court departed from an acceptable standard of further inquiry once the existence of the newspaper articles came to its attention by polling the jurors in a manner that intimidated them.[3] These arguments must fail.

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. . . . [E]ach case must turn on its own special facts." *Marshall v. United States*, 360 U.S. 310, 312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959). In *Marshall*, the Court ordered a new trial where seven jurors in a criminal case had read prejudicial news articles. In the case before us, there is no evidence that any of the jurors who sat in judgment of Word saw the articles in question. Moreover, appellant at no time requested that the jurors be polled individually or, indeed, that they be polled at all.[4] He did not object to the method of voir dire employed by the District Court or to the language used. When the District Judge questioned the jury with respect to one of the three articles, appellant's counsel requested that he ask about a second article, but made no mention of the third. The District Judge had properly warned the jury to ignore media publicity about the case. Under such circumstances, appellant cannot be heard to complain of the manner or scope of the inquiry conducted by the District Court.[5] *United States v. Sutherland*, 463 F.2d 641, 650 (5th Cir.), *cert. denied*, 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972) (where no objection was made to proce-

3. The District Court had earlier told the jury that they should tell anyone who tried to discuss the case with them that they would be jailed if they did.

4. The District Court questioned the jury at the government's request.

5. In so holding, we do not intimate our approval of the method of polling chosen by the District Judge. *See Rizzo v. United States*, 304 F.2d 810, 815–16 (8th Cir.), *cert. denied*, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962) ("[w]here during a trial it appears that members of a jury have violated the instructions of the Court in the matter of reading newspaper accounts of the trial, it is the proper practice, if not required practice, for the

examination of individual jurors as to that matter to be conducted in the absence of the other jurors.") *See also* American Bar Association Project on Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press ¶ 3.5 (1968). Therein the advisory committee suggests that a request should be required before an interrogation of the jury as to prejudicial publicity is conducted, but that in any such interrogation each juror should be questioned outside the hearing of the other jurors in an atmosphere that is not conducive to intimidation. For discussion of these procedures, see *United States v. Hyde*, 448 F.2d 815, 848 n. 38 (5th Cir. 1971), *cert. denied*, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972).

dures followed by the district court with regard to prejudicial newspaper stories published during defendant's trial, only a per se rule that any publication of a prejudicial newspaper story requires a mistrial would aid defendant and such a per se rule is contrary to law); *see United States v. Noah*, 475 F.2d 688, 692–93 (9th Cir.), *cert. denied*, 414 U.S. 1095, 94 S.Ct. 119, 38 L.Ed.2d 59 (1973) (court could not find that publicity prejudiced jury where district court asked jurors whether any of them had seen the article and there was no evidence that more than one juror had read it; court will not assume each juror purposely lied); *cf. Ferrari v. United States*, 244 F.2d 132, 138–40 (9th Cir.), *cert. denied*, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78 (1957) (burden of proof is on defendant to show prejudice resulting from newspaper articles, *quoting United States v. Carruthers*, 152 F.2d 512 (7th Cir.), *cert. denied*, 327 U.S. 787, 66 S.Ct. 805, 90 L.Ed. 10–14 (1945)).

## II.

■ Appellant contends that the District Court was without jurisdiction to sentence him because the Missouri statutes under which he was indicted, V.A.M.S. §§ 560.135 and 556.170 (1953), do not define criminal conduct and, more significantly, that he could not be punished under the Missouri statutes because the conduct for which he was convicted is proscribed by a federal statute, thus making the Assimilative Crimes Act inapplicable. 18 U.S.C. § 13.[6] The government's answer to these contentions is (1) that V.A.M.S. § 560.135 does in fact define criminal conduct, and in any event defendant was on notice of the nature of the charge and (2) that robbery in the first degree by means of a dangerous and deadly weapon under Missouri law is a different offense from the conduct prohibited by 18 U.S.C. § 2111.

V.A.M.S. § 560.135 provides:

*Robbery by means of dangerous and deadly weapons—penalty*

Every person convicted of robbery in the first degree by means of a dangerous and deadly weapon shall suffer death, or be punished by imprisonment in the penitentiary for not less than five years, and every person convicted of robbery in the first degree by any other means shall be punished by imprisonment in the penitentiary for not less than five years; every person convicted of robbery in the second degree shall be punished by imprisonment in the penitentiary not exceeding five nor less than three years; every person convicted of robbery in the third degree shall be punished by imprisonment in the penitentiary not exceeding five years.

V.A.M.S. § 560.120 defines first degree robbery:

*Robbery in first degree*

Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person; or who shall be convicted of feloniously taking the property of another from the person of his wife, servant, clerk or agent, in charge thereof, and against the will of such wife, servant, clerk or agent by violence to the person of such wife, servant, clerk or agent, or by putting him or her in fear of some immediate injury to his or her person, shall be adjudged guilty of robbery in the first degree.

The most thorough analysis of these two sections and their relationship to one another by the Missouri Supreme Court is found in *State v. Curtis*, 324 Mo. 58, 23 S.W.2d 122 (1929). Therein the court considered an appeal from a judgment of conviction for robbery in the first degree, in part on the ground that V.A.

M.S. § 560.135, then Mo.Rev.Stat. § 3310 (1919), unconstitutionally contained more than one subject.[7] The court said:

* * * The bill or statute contains only one subject, that of punishment for robbery, and it is clearly expressed in the title. Robbery in the first degree, if the other elements are present, comprehends an act committed with or without a dangerous and deadly weapon, as the facts develop, and that a greater punishment is prescribed for robbery in the first degree with a dangerous and deadly weapon than without the use of such does not affect the relation of the title and the subject to each other, for both the title and subject relate to one concept, that of punishment for robbery. The new section 3310 does not make that a crime which was not a crime before. Both before and after the passage of new section 3310, it was robbery in the first degree to feloniously take the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person, by the use of a dangerous and deadly weapon. While the punishment prescribed in the act for the use of a dangerous and deadly weapon in the perpetration of first degree robbery is more severe and greater than a robbery committed without its use, yet the subject was single, that of punishment for robbery, and it was clearly expressed in the title.

The most recent statement of the Missouri Supreme Court on this subject is in accord with the *Curtis* decision. In *Keeny v. State*, 461 S.W.2d 731, 732 (Mo. 1971), the court addressed an appellant's contention that his conviction on a charge of first degree robbery was defective since he had been charged in the information with robbery with a deadly and dangerous weapon. In response to this argument, the court said:

the presence of a dangerous and deadly weapon is not an essential element of the offense [of first degree robbery], but if found merely enhances the punishment. . . .

. . . Robbery in the first degree comprehends an act committed with or without a dangerous and deadly weapon. This element goes merely to the penalty . . . .

Other Missouri cases in which a similar result was reached include *State v. Vigus*, 66 S.W.2d 854, 857 (Mo.1933) (robbery in the first degree comprehends an act committed with or without a dangerous and deadly weapon; allegation that robbery was committed by use of a pistol is only for the purpose of invoking the more severe penalty prescribed by the first provision of V.A.M.S. § 560.135), and *State v. Pope*, 364 S.W.2d 564, 568 (Mo.1963) (element of a dangerous and deadly weapon goes merely to the penalty; it is not a charge of a separate offense, as such).

Thus, V.A.M.S. § 560.135 merely provides the penalty to be assessed following a conviction for first degree robbery. While the Missouri offense is set forth in V.A.M.S. § 560.120,[8] this flaw in Word's indictment is not fatal and no reversal is required. He was clearly put on notice that he was being charged with armed robbery.[9] Fed.R.Crim.P. 7(c)(3) provides

---

7. Article 4, § 28 of the Missouri Constitution provided in part, at the time of *State v. Curtis*:

No bill shall contain more than one subject which shall be clearly expressed in its title. . . .

8. V.A.M.S. § 556.170, also included in Word's indictment, specifies when an accessory to a crime can be punished. Insofar as it is applicable to this case, it would apply under either V.A.M.S. § 560.135 or § 560.120.

9. The indictment read, in part:

On or about the 18th day of October, 1968, at Fort Leonard Wood, in the Western District of Missouri, on land acquired for the use of the United States and under the exclusive jurisdiction thereof, MAJOR BECTON and HARRY DINO WORD, a/k/a HARRY DINO HURD, did then and there wilfully, unlawfully, and feloniously make an assault in and upon one Wayne Eugene Gilbert, Harold Joe Presley, and Bobby Dean

that an error in a statutory citation in an indictment is not a ground for dismissal of the indictment or reversal of a conviction unless the defendant was misled to his prejudice. *See generally Williams v. United States*, 168 U.S. 382, 389, 18 S.Ct. 92, 42 L.Ed. 509 (1897) (if indictment properly charges offense under some statute in force, it is immaterial that representative of the United States may have supposed that the offense charged was covered by a different statute); *United States v. Luis*, 418 F.2d 439 (5th Cir. 1969) (bail jumping conviction not reversed where no prejudice was shown by reason of indictment citing statute relating to bail rather than rule relating to bail). Moreover, appellant made no motion to dismiss the indictment or any of its counts. *See* Fed.R. Crim.P. 12.

■ Turning to appellant's second contention, the conclusion is inescapable that the conduct proscribed by V.A.M.S. § 560.120 is identical to that made illegal on federal territory by 18 U.S.C. § 2111.[10] Under each, a conviction may be sustained for robbery by force, violence or intimidation. *Compare Collins v. McDonald*, 258 U.S. 416, 420, 42 S.Ct. 326, 66 L.Ed. 692 (1922), *with State v. Sharpe*, 326 Mo. 1063, 34 S.W.2d 75, 76–77 (1930), *and State v. White*, 326 Mo. 1000, 34 S.W.2d 79, 80–81 (1930). The offense defined in 18 U.S.C. § 2111 includes within its reach robbery by means of a dangerous and deadly weapon and thus the use of such weapon describes no

separate and independent crime under federal law.[11] The use of a dangerous weapon is no more an essential element of the state offense than it is of the federal crime. *See Keeny v. State, supra*. Word therefore should have been charged under 18 U.S.C. § 2111, rather than the Assimilative Crimes Act and the Missouri statute. *United States v. Patmore*, 475 F.2d 752, 753 (10th Cir. 1973) (where the precise act prohibited by the state statute is defined and prohibited by a federal statute, the Assimilative Crimes Act is not to be used and the government is to proceed under the applicable federal statute); *see Fields v. United States*, 438 F.2d 205 (2d Cir.), *cert. denied*, 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971). *See generally* Annot. 2 L.Ed.2d 1686 (1958).

■ Where the government wrongfully secures a conviction under a state statute pursuant to the Assimilative Crimes Act, rather than under the relevant federal statute, the appropriate remedy is not a reversal of the conviction, but rather a vacating of the sentence and a remand to the district court for resentencing. *United States v. Olvera*, 488 F.2d 607 (5th Cir. 1973), *cert. denied*, 416 U.S. 917, 94 S.Ct. 1625, 40 L.Ed.2d 119 (1974); *United States v. Patmore, supra* ; *Hockenberry v. United States*, 422 F.2d 171 (9th Cir. 1970).

Accordingly, while we affirm the judgment of conviction, appellant's sentence under V.A.M.S. § 560.135 and § 556.170 is ordered vacated. The case is remand-

---

Tryan, with a dangerous and deadly weapon, to wit, a gun which was loaded with gun powder and leaden balls, and did feloniously rob, steal, take and carry away certain property, to wit, money in the aggregate value of $3,636.95, the money being the personal property of the Soto Service Club, and the said Wayne Eugene Gilbert, Harold Joe Presley and Bobby Dean Tryan, who had custody of property stolen from the person and against the will of the said Wayne Eugene Gilbert, Harold Joe Presley, and Bobby Dean Tryan, then and there by force and violence to the person of the said Wayne Eugene Gilbert, Harold Joe Presley and Bobby Dean Tryan, and by putting the said Wayne Eugene Gilbert, Harold Joe Presley, and Bobby Dean Tryan, in fear of an immediate injury

to their persons, in violation of Title 18, United States Code, Sections 7 and 13; and V.A.M.S., Sections 560.135 and 556.170.

**10.** *See* note 2 *supra*.

**11.** *E. g., United States v. Benson*, 495 F.2d 475 (5th Cir.), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974) (robbery with bayonet on military reservation); *United States v. Hodge*, 487 F.2d 945 (5th Cir. 1973) (armed robbery on military reservation); *United States v. Thomas*, 469 F.2d 145 (8th Cir. 1972), *cert. denied*, 410 U.S. 957, 93 S.Ct. 1429, 35 L.Ed.2d 690 (1973) (robbery and assault with pistol on an Indian reservation); *United States v. Marshall*, 266 F.2d 92 (7th Cir. 1959) (robbery with knife on military reservation).

ed to the District Court for resentencing under 18 U.S.C. § 2111.[12]

12. Under V.A.M.S. § 560.135 a person convicted of first degree robbery can receive a sentence of from five years to life in prison. Under 18 U.S.C. § 2111 there is no minimum penalty, the maximum being fifteen years in prison.