# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-2730

———————

| | | |
|---|---|---|
| Simon Curtis Tunstall, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Frank X. Hopkins, NSP Warden; | * | |
| Herbert Maschner, ISP Warden, | * | |
| | * | |
| Appellees. | * | |

———————

Submitted: February 14, 2002

Filed: September 24, 2002

———————

Before LOKEN, and RILEY, Circuit Judges, and KORNMANN,[1] District Judge.

———————

RILEY, Circuit Judge.

Simon Curtis Tunstall (Tunstall) appeals the denial of his petition for habeas corpus relief under 28 U.S.C. § 2254 by the district court.[2] On February 18, 1987, a jury convicted Tunstall of murder in the first degree and burglary in the first degree.

———————

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

An Iowa state court sentenced Tunstall to life imprisonment without the possibility of parole. The district court denied habeas relief, finding defense trial counsel was not ineffective in failing to request a jury poll regarding a newspaper article during the trial and also finding no trial court error in failing to poll the jury regarding the mid-trial publicity. Additionally, the district court found no ineffective assistance of counsel for failure to introduce a trial witness's deposition transcript. We affirm.

## I.     BACKGROUND

Tunstall's conviction stems from the uninvited entry into the apartment and subsequent shooting death of Jeffrey Jones (Jones) on August 31, 1986. Tunstall, along with co-defendants Steven Frasier (Frasier) and James Simpson (Simpson), were each charged with murder and burglary. Simpson initially entered into a plea agreement with the State and gave a sworn statement. However, the trial court rejected the plea and suppressed the statement. The three were then tried together.

During the general jury orientation and in an admonition[3] given at the end of the first day of trial, the court instructed the jury to disregard any news media coverage about the trial. On the second day of trial, February 5, 1987, Simpson's

---

[3]The orientation instruction to the jury stated:

You must not give any consideration to what you may hear about the case in the news media or elsewhere. Your decision must be based solely upon the evidence presented to you in the trial of the case and the court's instructions. That will be your sworn duty if you are selected as a juror.

The admonition stated:

And it's conceivable that there could be some mention of this case somewhere in the paper or on TV or something like that. And if there is, remember what I told you about that. Don't pay any attention to it, whatever you – anyone else might say about this case. You folks know far more about what's happened than anyone else could possibly know.

counsel moved for a mistrial and change of venue based upon an article contained in that day's local newspaper. The article mentioned the trial court's rejection of Simpson's plea agreement and contained statements purportedly made by Simpson in the suppressed statement. Simpson's counsel also notified the trial court that he had seen a juror reading a newspaper in the jury lounge.

Tunstall's counsel joined the motion for mistrial, arguing the newspaper article was prejudicial to Tunstall in two respects. First, the article contained misstatements: (a) the headline was "Woman to take stand in trial of three pimps," which was inaccurate because no evidence existed that Tunstall was involved in soliciting prostitution; and (b) the article stated the three defendants were cousins, when only Tunstall and Frasier are cousins. Second, the suppressed statement made by Simpson included inculpatory conduct alleged to have been carried out by Tunstall, specifically that Simpson had seen Tunstall go inside the apartment and, later, hit Jones with a piece of furniture. Tunstall's counsel also moved for a change of venue and to sever the trial of Tunstall from the other defendants.

Frasier's counsel joined the motions for mistrial, to change venue, and to sever. None of the defense counsel sought to voir dire the jury regarding the newspaper article. The prosecutor opposed the motions, stating the evidence presented, merely a newspaper article, was insufficient to sustain a mistrial or show prejudice. The prosecutor argued the court should overrule the motion or direct that further record be made. The trial court denied the motions without taking additional evidence.

During the trial Officer Kelvin Smith (Officer Smith) testified that Dennis Jackson (Jackson) gave statements supporting the prosecution's theory that Tunstall had violent intent when looking for Jones. Specifically, Officer Smith testified, based on Jackson's statements, three or four black males threatened Jackson with a gun outside the motel and asked him where Jones lived.

However, Jackson's deposition testimony is different from the statements attributed to Jackson by Officer Smith. In his deposition, Jackson stated he had only seen Tunstall and Frasier in the motel room, and they came to talk to him because Frasier heard Jackson had said Frasier was a "snitch." During the deposition Jackson said no weapon was pointed at him, but Frasier held a gun down to his side, and no threats were made. Jackson stated the three discussed Jones in the context of seeing him on the previous Saturday night when Jones had damaged some of Frasier's property. Further, Jackson stated Frasier was looking for Jones.

Jackson refused to testify during trial, invoking his Fifth Amendment right to remain silent. The prosecution moved to offer the deposition as primary evidence – testimony of an unavailable witness. Jackson's counsel indicated that Jackson refused to testify at trial, in part, because the prior deposition testimony was different from what he would testify in court, and therefore Jackson would be subject to perjury charges. Counsel for Tunstall opposed admission of the deposition, arguing the evidence was cumulative and perjurious. Further, Tunstall's counsel argued he would not be able to challenge Jackson's credibility if Jackson did not testify. Counsel for Frasier and Simpson joined in the objection. Thereafter, the court sustained the objections based upon the Iowa Rules of Evidence.

The jury convicted Tunstall of first degree murder and burglary. The court sentenced him to life imprisonment. Tunstall appealed his conviction to the Iowa Court of Appeals on various grounds. The appeal was denied. In January 1991, Tunstall petitioned for post-conviction relief in the Iowa District Court, which held a hearing on the matter and ultimately denied relief. Tunstall appealed the denial to the Iowa Court of Appeals, which denied habeas relief finding Tunstall had failed to prove counsel's conduct prejudiced him in any manner or that the trial court was under any obligation to voir dire the jury about the newspaper article. The federal district court then denied habeas relief, finding the state court proceedings did not result in decisions which are contrary to, or involve an unreasonable application of,

clearly established federal law. The district court granted a certificate of appealability on the three claims presented here.

## II.    DISCUSSION

In consideration of a state habeas petition, "[w]e review the district court's findings of fact for clear error and its conclusions of law de novo." Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002) (citation omitted). Additionally, the state court's factual findings are presumed correct. The petitioner has the burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Kenley v. Bowersox, 275 F.3d 709, 711-12 (8th Cir. 2002). Such "presumption of correctness applies to all factual determinations made by state courts of competent jurisdiction, including trial courts and appellate courts." Pruett v. Norris, 153 F.3d 579, 584 (8th Cir. 1998) (citing Sumner v. Mata, 449 U.S. 539, 546 (1981)).

Within these boundaries a federal court's review is limited to determining whether the conviction or sentence was obtained in violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see Williams v. Taylor, 529 U.S. 362, 389 (2000). "The deprivation of the right to the effective assistance of counsel recognized in Strickland is such an error." Id. (citing Strickland v. Washington, 466 U.S. 668, 686, 697-98 (1984)).

Implicated in this case is the amendment to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The relevant portion of that amendment provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

The threshold question under AEDPA is whether the defendant seeks to apply a rule of law that was clearly established at the time his state-court conviction became final. Williams, 529 U.S. at 379 (Stevens, J. concurring); see also Teague v. Lane, 489 U.S. 288, 310 (1989). That question is answered in the affirmative where the merits of the claim are squarely governed by Strickland v. Washington, 466 U.S. 668 (1984). See Williams, 529 U.S. at 391. A defendant is "therefore entitled to relief if the [state court's] decision rejecting his ineffective-assistance claim was either 'contrary to, or involved an unreasonable application of,' that established law." Id.

A claim based upon a violation of the right to counsel under the Sixth Amendment has two components:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.

To establish ineffectiveness, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Williams, 529 U.S. at 390-91 (citing Strickland, 466 U.S. at 688). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Every effort must be made to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [The] court must indulge a strong presumption

-6-

that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." <u>Id.</u> Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Id.</u> at 690-91. The defendant must overcome the presumption that the challenged conduct "might be considered sound trial strategy." <u>Id.</u> at 689 (citation omitted).

To establish prejudice a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Williams</u>, 529 U.S. at 391 (citing <u>Strickland</u>, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Strickland</u>, 466 U.S. at 691. Thus, even if a petitioner could show deficiencies on counsel's part, the defendant must also satisfy the second prong of the test affirmatively proving prejudice. <u>Id.</u> at 693.

### A.    Deposition Testimony

Tunstall contends his trial counsel was ineffective when he did not offer the deposition testimony of Jackson to discredit the live testimony of Officer Smith. Officer Smith testified as to certain statements made by Jackson on the day Jones was killed. Tunstall argues the testimony presented by Officer Smith gave rise to an inference that both Tunstall and Frasier had violent intentions toward Jones before they entered into Jones's apartment. Tunstall contends the deposition testimony of Jackson indicated that Jackson had spoken to Tunstall and Frasier, that Tunstall and Frasier did not threaten Jackson, and that Tunstall and Frasier appeared intoxicated. Tunstall reasons that this testimony would have substantially undercut the prosecution's theory of Tunstall and Frasier conducting a "manhunt" for Jones. Finally, Tunstall argues Jackson's recantation of his deposition testimony at trial was

unreliable and defense counsel should not have presumed the deposition testimony was perjurious.

The State argues the Jackson deposition contains information detrimental to Tunstall by positively identifying Tunstall and Frasier and by describing why Frasier was looking for Jones. Tunstall denies the Jackson deposition is detrimental because during trial both Tunstall and Frasier admitted they had spoken to Jackson. Furthermore, Frasier admitted talking to Jackson about Jones and why Frasier was looking for Jones.

This court is not faced with the question of whether or not the Jackson deposition contains perjury. We must determine, given that the Jackson deposition may contain perjured testimony, whether Tunstall's counsel's failure to use the deposition to rebut Officer Smith's testimony fell below an objective standard of reasonableness. We find trial counsel's conduct objectively reasonable.

The Eighth Circuit has found constitutionally deficient performance based on ineffective cross-examination and on failure to rebut devastating evidence when defense counsel did not offer prior grossly inconsistent statements. See Hadley v. Groose, 97 F.3d 1131 (8th Cir. 1996) (counsel ineffective for failure to impeach with police report after one police officer testified that two sets of footprints were the same and the police report, written by a second officer, stated the footprints were different).

In this case, the errors alleged by the petitioner do not rise to the level required for reversal. Defense counsel did not have available any grossly inconsistent prior statements to challenge any devastating evidence. The basic facts remain similar in either person's testimony: Frasier, with Tunstall, asked Jackson where Jones could be found and Frasier had a weapon at the time. Tunstall and Frasier testified as to their version of events, which contradicted the version told by Officer Smith. In this case then, Jackson's deposition testimony would primarily have been cumulative. Additionally, all three defense counsel objected to the prosecution's offer of Jackson's

deposition, and they succeeded in excluding the deposition. Clearly, based on the arguments of defense counsel, it was not mere oversight which lead to the failure to admit Jackson's deposition, but it was a strategic choice to object to its admission based upon investigation and forethought. Finally, the Jackson deposition testimony supporting Tunstall's theory of the case did not clearly outweigh the negative or inculpatory evidence in the deposition.

Therefore, after comparing the testimony of Officer Smith with the deposition testimony of Jackson, adhering to the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, we find Tunstall's trial counsel acted reasonably in his decision to object to the admission of Jackson's deposition testimony and to refrain from using the deposition as rebuttal evidence.

Regardless of the substantive content of the deposition, Jackson's own counsel inferred the testimony differed from what Jackson would testify during trial. In fact, the reason given for Jackson's refusal to testify was that he would subject himself to perjury charges for his prior deposition testimony. Had Tunstall's counsel failed to object to the submission of Jackson's deposition, or admitted it himself, Tunstall could have then argued the prosecution or his own counsel "knew or should have known of the perjury," and the knowing presentment of false testimony violated due process. See United States v. Papajohn, 212 F.3d 1112, 1117 (8th Cir. 2000). This court finds counsel's conduct imminently reasonable in excluding probable perjurious testimony.

Assuming, arguendo, the exclusion of Jackson's deposition caused Tunstall prejudice, the deposition's probable perjurious nature makes such prejudice illegitimate. As the Supreme Court recently observed:

[T]here are also situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate "prejudice." Even if a

> defendant's false testimony might have persuaded the jury to acquit him,
> it is not fundamentally unfair to conclude that he was not prejudiced by
> counsel's interference with his intended perjury.

Williams, 529 U.S. at 391-92 (citing Nix v. Whiteside, 475 U.S. 157, 175-76 (1986)).

Therefore, we must conclude the Iowa courts' decision, finding no ineffective assistance of counsel with regard to the Jackson deposition, is not contrary to or an unreasonable application of clearly established federal law. Tunstall is not entitled to habeas relief on this basis.

## B.    Trial Publicity - Ineffective Assistance

Tunstall argues he was deprived of effective assistance of counsel by his counsel's failure to request voir dire of the jury panel after a newspaper was observed in the jury lounge. The observation occurred the same day an article appeared containing information about the trial of Tunstall and his co-defendants. Some of the information in the article was false and some referred to information excluded as evidence by the court. The Iowa state courts evaluated Tunstall's argument under the rubric of Strickland and concluded that Tunstall had failed to prove he suffered any prejudice due to his counsel's failure to voir dire the jury.

On review, the federal district court stated defense counsel's conduct regarding the trial publicity matter, moving for a mistrial and not seeking to voir dire the jury, "typifies the tactical and strategic decisions that attorneys make during trials." We agree.

All three defendants' trial counsel moved for a mistrial based upon information that a newspaper was seen open in the jury lounge before the day's proceedings. There was no evidence that such newspaper was the same newspaper that contained the offending article, that the juror with the newspaper was a juror in the Tunstall trial, or that any Tunstall juror had read the article. While counsel for Tunstall

-10-

provided an affidavit stating he did not recall a reason, if there was one, for failure to voir dire the jury, counsel for Simpson testified he did not voir dire for the same reason the court denied the motion for a mistrial – lack of evidence that the jury had been influenced in any way. Frasier's counsel explained his experienced, calculated decision not to ask for a poll of the jury, and further testified that a poll, in his opinion, had the disadvantage of defeating a claim on appeal concerning the denial of his motion for a mistrial.

Failure to voir dire the jury based upon the newspaper article was not mere oversight, but a strategic choice. Defense counsel chose instead to move for a mistrial, change of venue and to sever the trial of each defendant. Defense counsel may have believed voir dire of each juror would have only highlighted the newspaper article or brought it to the attention of jurors who would have otherwise overlooked or ignored it. Defense counsel could also have believed this jury panel was a good one and not wanted to disrupt the panel with this inquiry.

In addition, Tunstall makes absolutely no showing of prejudice. The record is void of juror affidavits, testimony or any other evidence that any juror in this case saw or read the offending newspaper article. We decline the invitation to assume prejudice.

Prejudice may be determined based on the trial court's finding that the information was too prejudicial to be admitted at trial in the first place. In Marshall v. United States, 360 U.S. 310, 312-13 (1959) (per curium), the Supreme Court granted a new trial after direct appeal of a federal jury verdict against Marshall exercising its "supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts." During the Marshall trial, "a substantial number of jurors" read news accounts containing information that the defendant had prior convictions for practicing medicine without a license. Id. at 311. The trial court had excluded the evidence finding it irrelevant and prejudicial. Id. After learning jurors had read the news accounts, the trial judge polled the jurors

individually. Each of the exposed jurors assured the judge that he had not been influenced and could decide the case based solely on the evidence presented. Id. at 312. Based on the assurances and finding no prejudice, the trial court denied the motion for mistrial. On review, the Supreme Court determined evidence reaching the jury through the media is almost certain to create prejudice to the same or greater extent than if it is entered during trial, partly because "it is then not tempered by protective measures." Id. at 312-13. Since the Marshall trial court had previously determined the evidence was prejudicial, a new trial was warranted.

Marshall can be easily distinguished from the case at bar. First, Marshall explicitly applies only as a part of the Court's supervisory authority over federal courts. The Tunstall case comes to us from state court, and since 1996 we are governed by AEDPA. Second, evidence existed that the Marshall jurors had been exposed to the articles. There was no such evidence here in the state court proceeding, during or after the trial. Although a juror was seen reading a newspaper, there was no evidence the juror was reading the article in question or was even a juror in Tunstall's trial. See King v. Bowersox, 291 F.3d 539, 541 (8th Cir. 2002) (no duty by state trial judge to conduct inquiry where no showing jury saw a hallway display of memorial for murder victim).

Finally, in the absence of contrary evidence, we presume, as do Iowa courts, that jurors will follow court admonitions to avoid media coverage regarding a case upon which they are sitting. Jones v. United States, 527 U.S. 373, 394 (1999); Iowa v. Aldape, 307 N.W.2d 32, 45 (Iowa 1981). The jurors in this case were so advised and there is no evidence offered to rebut the presumption such admonitions were followed.

We find no ineffective assistance of counsel nor prejudice to Tunstall based upon counsel's failure to voir dire the jury after a newspaper article appeared in the local paper. Accordingly, we conclude the decision of the Iowa courts is not contrary

to or an unreasonable application of clearly established federal law. Tunstall is not entitled to habeas relief on this basis.

### C.    Trial Publicity - Trial Court Error

Tunstall argues the trial court itself made a constitutional error in its failure to voir dire the jury after the report that a newspaper was seen in the jury lounge. The Iowa courts determined the trial court was under no obligation to voir dire the jury regarding the trial publicity. Similarly we find the state court had no such obligation under federal law.

Tunstall is entitled to relief if the state court's failure to voir dire was either "contrary to, or involved an unreasonable application of" clearly established federal law, as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). The Supreme Court has determined that adverse trial publicity may create a partial jury, resulting in an unfair trial. See Gannett Co. v. DePasquale, 443 U.S. 368, 378 (1979); see also Sheppard v. Maxwell, 384 U.S. 333, 363 (1966) (inherently prejudicial publicity deprived defendant of fair trial).

The Eighth Circuit outlined a three-step framework for federal trial courts in our circuit to apply when confronted with the issue of whether mid-trial publicity violates a defendant's Sixth Amendment right to a fair trial by an impartial jury. See United States v. Hood, 593 F.2d 293, 296 (8th Cir. 1978). In this circuit, a federal district court must:

1)    determine whether the publicity creates a danger of substantial prejudice to the accused;
2)    if so, poll jurors individually to see if they were exposed; and
3)    if they were exposed, then ascertain the extent and effect of infection, and determine what measure must be taken to protect the rights of the accused.

In <u>Hood</u>, the federal district court denied a motion to poll the jurors, determining the publicity did not create a danger of substantial prejudice. We found no abuse of discretion, but we said the better practice would be to poll the jury. <u>Id.</u> at 297.

Our test in <u>Hood</u> is based upon a defendant's constitutional right to a fair trial. The <u>Hood</u> court drew upon the Supreme Court's analysis in <u>Marshall</u>. <u>See</u> <u>id.</u> at 296 (citing <u>Marshall</u>, 360 U.S. at 312-13). As discussed above, the procedures outlined in <u>Marshall</u> were designed and imposed under the Supreme Court's supervisory power over the federal courts. <u>Marshall</u>, 360 U.S. at 312. Thus, our circuit's test, which stems from <u>Marshall</u>, is not a clear constitutional requirement for the state trial courts.

After Tunstall moved for a mistrial, the Iowa trial court judge admitted evidence and heard argument for Tunstall. Based upon Iowa standards for granting a mistrial, the trial judge determined that the defendants failed to meet their burden to prove they suffered a miscarriage of justice. <u>See</u> <u>Iowa v. Williamson</u>, 570 N.W.2d 770, 771 (Iowa 1997). As noted above, Tunstall did not move to poll the jurors to show that any juror in the case had been exposed to the article. Although he had an opportunity to do so, Tunstall did not persuade the trial judge that the newspaper in the jury room created a danger of substantial prejudice.

Federal law does not clearly compel a presumption of prejudice in this case.[4] In <u>Remmer v. United States</u>, 347 U.S. 227, 229 (1954), the Supreme Court held that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . deemed presumptively prejudicial." <u>Accord</u> <u>United States v. Olano</u>, 507 U.S. 725 (1993); <u>Smith v. Phillips</u>, 455 U.S. 209, 215 (1982). Several circuits, including ours,

_____

[4]We note Tunstall's trial did not involve the type of "media circus" that mandates a presumption of prejudice. <u>See</u> <u>Irvin v. Dowd</u>, 366 U.S. 717, 725-28 (1961).

have extended the Remmer presumption to claims alleging juror exposure to extraneous information, including claims of mid-trial media exposure. See, e.g., Mayhue v. St. Francis Hosp. of Wichita, Inc., 969 F.2d 919, 922 (10th Cir. 1992); United States v. Perkins, 748 F.2d 1519, 1533-34 (11th Cir. 1984); United States v. Hillard, 701 F.2d 1052, 1064 (2d Cir. 1983); United States v. Bassler, 651 F.2d 600, 603 (8th Cir. 1981). However, other circuits have confined the application of Remmer to cases alleging third-party contact with jurors. See, e.g., United States v. Lloyd, 269 F.3d 228, 238 (3d Cir. 2001); United States v. Williams-Davis, 90 F.3d 490, 501-02 (D.C. Cir. 1996); United States v. Boylan, 898 F.2d 230, 260-61 (1st Cir. 1990). When the federal circuits disagree on the application of Remmer regarding any presumption of prejudice, it is difficult to say the Iowa court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Under the facts of this case, it was not unreasonable for the Iowa courts to determine there was no prejudice.

In each Remmer or Phillips-type case, the trial courts had clear evidence of the jury's exposure to extraneous information. Since Phillips, we have, with deference to the trial court, required "a party [to] show[ ] that outside contact with the jury presents a reasonable possibility of prejudice to the verdict," before requiring a hearing. United States v. Tucker, 137 F.3d 1016, 1030 (8th Cir. 1998) (juror misconduct based on alleged outside influence). Further, the hearing required or "the depth of investigation required [by the court] depends on both the gravity of the alleged misconduct and the substantiality of the movant's showing of misconduct." Id. at 1031.

In the absence of any showing of actual exposure, we find the state trial court had no duty to poll the jury.[5] See King, 291 F.3d at 541; see also Iowa v. Marr, 316

---

[5]The federal district court's power to hear new evidence in support of Tunstall's claims is limited by 28 U.S.C. § 2254(e)(2). In general, the time to gather evidence is during the state court proceedings.

N.W.2d 176, 180-81 (Iowa 1982) (absent showing of actual prejudice resulting from news articles, mistrial was not warranted). We find <u>King</u> controlling and persuasive precedent.

In <u>King</u>, after the closing arguments of the murder trial, a family member of one of the decedents placed a large photograph, a smaller photograph and a stack of "In Memory" leaflets of the decedent in the hallway across from the entrance to the jury room. We determined "in the absence of any showing that the jury saw or was even aware of the hallway display, there was no duty of the state trial court to conduct an inquiry into the matter." <u>King</u>, 291 F.3d at 541. In comparison, the Tunstall jury's alleged exposure is more attenuated than the <u>King</u> jury because we have no evidence in this case that the newspaper in the jury room was the newspaper with the offending article or that the subject article was read by a juror in Tunstall's case.[6]

Following <u>King</u>, we find the state trial judge did not have a constitutional duty in this case to poll the jurors.

## III. CONCLUSION

Having considered all of the claims raised in Tunstall's petition, we affirm the district court's denial of habeas relief.

KORNMANN, District Judge, dissenting.

I concur fully with the holding and discussion with regard to deposition testimony, namely that the Iowa state courts' decision as to that issue is neither contrary to nor an unreasonable application of clearly established federal law.

---

[6]As in <u>King</u>, we need not decide whether <u>Remmer</u>'s presumption that prejudice results from any outside influence on the jury survives the Supreme Court's later rulings in <u>Phillips</u> and <u>Olano</u>.

While I am skeptical of any reasonable rationale for trial counsel to not have requested the judge to poll the jury, especially after not asking for a recess to discuss the matter with his client and the two other defense attorneys, I do not believe that the Iowa courts decided the <u>Strickland</u> issues in a manner that is contrary to or an unreasonable application of clearly established federal law.

I respectfully dissent on the Sixth Amendment issue. With all due respect, I cannot subscribe to certain findings and holdings in the majority opinion. If nothing else, the state trial court proceedings are not a model of what any trial judge should do. The judge should have questioned the jury or, at a minimum, after having read the very offensive and distorted newspaper article, the judge should have inquired of counsel and perhaps of the three defendants personally whether they wished the judge to question the members of the jury as to whether any juror had read any article about the trial and, if so, what the effect of the article was on the juror or jurors. A trial judge should be especially careful in trials involving several defendants, obviously with different lawyers. Better practice would have been to allow each lawyer to confer privately with his or her client and then perhaps to allow the defendants and all lawyers to confer to attempt to decide what to do in the face of this totally unexpected trial development.

The state court trial judge failed to follow or even consider, as far as we know, what was then clearly established law in the Eighth Circuit, which law is based upon United States Supreme Court cases. We should not retreat from the teaching of <u>United States v. Hood</u>, 593 F.2d 293, 296-97 (8th Cir. 1979):

> Whenever it appears during the course of a trial that the members of the jury <u>may have been exposed</u> to publicity which is adverse to the defendant, the trial judge <u>must make an initial determination</u> as to whether the publicity creates a danger of substantial prejudice to the accused. *See United States v. Jones*, 542 F.2d 186, 194-195 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed2d 375 (1976); *United States v. Pomponio*, 517 F.2d 460, 463 (4th Cir.), *cert. denied*, 423 U.S.

-17-

1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). If the trial judge determines that it does, <u>the jurors should then be polled individually</u> to determine whether they have in fact been exposed to the prejudicial information. If any jurors have been so exposed, the trial judge must ascertain the extent and effect of the infection, and what measures, including the possible declaration of a mistrial, must be taken to protect the rights of the accused. *See Marshall v. United States*, 360 U.S. 310, 312, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); *Mastrian v. McManus*, 554 F.2d 813, 819 n.5 (8th Cir.), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977); *United States v. Word*, 519 F.2d 612, 615 n.5 (8th Cir.), *cert. denied*, 423 U.S. 934, 96 S.Ct. 29, 46 L.Ed.2d 265 (1975); *United States v. Jones, supra* at 194; *United States v. Armocida*, 515 F.2d 29, 49 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975) (emphasis supplied).

In this case, the trial court denied Hood's request for a poll of the members of the jury because, in its view, the information which was publicized failed to meet the <u>threshold requirement of creating a danger of substantial prejudice to the accused.</u> Prior to the publication of this information about Hood's arrest for an additional offense, Hood and his wife had already testified extensively about his prior arrests for three counts of murder in Arkansas, and for armed robbery and kidnaping in Arizona. Hood's defense was based upon the contention that he was being harassed by law enforcement authorities by the continual bringing of charges, and their eventual dismissal. While we believe that better practice <u>would require the polling</u> of the jury, <u>we cannot say, under the particular circumstances here, that the court's failure to do so constituted an abuse of discretion.</u> *See United States v. Jones, supra* at 194-195; *United States v. Armocida, supra* at 49; *United States v. Anderson*, 165 U.S.App. D.C. 390, 402, 509 F.2d 312, 324 (1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975) (emphasis supplied).

There is no question, I believe, that one or more members of the jury "may have been exposed to publicity" which was adverse to Mr. Tunstall. We do not have an answer to the "exposure question" but that is not the fault of the defendant. The language emphasized above that the trial judge "must make an initial determination"

as to the danger of substantial prejudice was violated here. The language is not that the trial judge "may" or "should consider" such a determination. In the present case, we have no idea what the state trial judge thought or whether he decided anything. He conducted no real hearing of any kind. As far as we know based upon the record before us, he clearly decided nothing other than to deny the motions for a mistrial. The Iowa judge never allowed the defendant to reach the "threshold requirement" because he shut the door before anyone could reach or even consider the threshold. The trial judge in Hood made such an initial determination as to the danger of substantial prejudice and properly so.

I respectfully disagree with the majority's determination that Hood did not set forth a clear constitutional requirement for state courts in this circuit. I think it is immaterial what other circuits have done or failed to do.

The present case is unlike Smith v. Phillips, 455 U.S. 209 (1982), a case in which the state trial judge held a hearing and decided, beyond a reasonable doubt, that the events giving rise to the motion to vacate the jury verdict had not influenced the verdict. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Id. at 217. Here, the Iowa trial judge was very frankly not "ever watchful" and made no determination other than to deny the motions for a mistrial. Thus, there are no "findings" of the state trial judge to be presumptively correct under 28 U.S.C. § 2254(d).

I fully recognize that, as we review a state court decision, we are limited by the Antiterrorism and Effective Death Penalty Act of 1996. Pub. L. 104-132, 110 Stat. 1214. As to the "findings" made by the Iowa Court of Appeals, I do not believe a state appellate court can reasonably make "findings" after the trial court had refused to conduct any hearing, make any inquiry, or even discuss the issues. Such "findings" by the Iowa Court of Appeals cannot be anything more than a guess. There is nothing to permit us to extend a presumption of correctness to the findings of the Iowa Court of Appeals. In other words, I believe that the action taken by the Iowa Court of Appeals "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence (there was none) presented in the state court proceedings." 28 U.S.C. § 2254(d). The required presumption of correctness has been rebutted by clear and convincing evidence that there was no evidence to support the state court "findings."

I cannot join in the statement by the majority that Tunstall had an opportunity to persuade the trial judge that the newspapers in the jury room created a danger of substantial prejudice and did not do so. All we have is silence on the part of the trial court and a flat denial of the motions for a mistrial. Neither the lawyers nor the trial judge even mentioned the teaching of Hood or the principle of law decided in Hood. Neither the lawyers nor the trial judge made any mention of the teaching of Remmer v. United States, 347 U.S. 227, 229 (1954), namely that there is presumptive prejudice if the jury is exposed to factual evidence not offered or received in evidence during the trial. The question of polling jury members was not even discussed by the state trial judge. In other words, unlike the trial judge in Hood, the Iowa judge exercised no discretion as to polling the jury. He neither considered nor decided the question; I believe he was legally required to do both.

-20-

The primary function of a trial judge is to see that all parties receive not only a fair trial but the fairest trial possible. Our Constitution does not, as we know, require a "perfect trial." Trial court judges, however, can and must do much better than was done in this case. State and federal trial judges should, as far as reasonably possible, explain on the record why something is being done or not being done, not leaving appellate courts to "infer," "assume," "presume," or, even worse, "guess."

I would hold there was clearly a danger of substantial prejudice based upon the article and the circumstances of this trial and that, as a result of the failures of the trial court, the defendant did not receive his Sixth Amendment right to a fair trial.

Had the jury been polled and had the trial judge determined that either there was no "infection" or that other measures were not required to protect the rights of the accused, we would not be where we are today. I am unwilling to simply assume that the trial judge had any permissible reason to deny the motion for a mistrial without first deciding the question of prejudice and then questioning the jury. I emphasize again: how could there be evidence of either exposure or influence without asking the jurors the first question and then, if necessary, the second question?

The majority notes that, unlike the facts in <u>Marshall v. United States</u>, 360 U.S. 310 (1959), there was no evidence before the state courts that any juror in Mr. Tunstall's trial had read the offending newspaper article. This is true. The reason, however, is because the trial judge failed to perform his duty under clearly established law. The judge knew that some juror in the jury waiting room was reading some newspaper on the day the offending article was published. This was more than a red flag. We must also keep in mind that at least two jurors were deceased by the time

the state court post-conviction claims could be presented. We know also that habeas counsel in the case of a co-defendant, detailing the refusal of surviving jury members to be interviewed or give affidavits, asked the federal magistrate judge to subpoena living members of the jury to testify about the newspaper article, whether jurors had seen it, and whether jurors had been influenced by it. This motion seeking evidence was denied. I do not know what more Mr. Tunstall or his lawyers in this habeas case could have done.

I also respectfully take issue with this statement: "In the absence of any showing of actual exposure, we find the state trial court had no duty to poll the jury." It seems to me this is the reverse procedure. You could have no evidence in the absence of the judge first considering whether the article was prejudicial in itself, regardless of whether any juror had read the article. He failed to consider anything in that regard, as far as we know. He failed to give any consideration to a poll. Without a poll, there could be no evidence as to any prejudicial effect on the jury and no evidence of actual exposure. After all, only the jury members could provide that evidence.

The Eighth Circuit has in recent years cited with approval United States v. Hood. See United States v. Darden, 70 F.3d 1507, 1535 (8th Cir. 1995). Darden also involved a newspaper story published during the trial. United States District Judge George Gunn, Jr. first discussed the article with the defendants and the attorneys, outside the presence of the jurors. Judge Gunn then addressed the members of the jury as a group, asking them if any of them had seen anything on television or in the newspapers about the testimony of a particular witness. None had. Later that same day, the judge again inquired whether anyone had talked to them about any

newspaper article. No one had. The appellant claimed that the judge had erred in not questioning each juror individually. <u>Darden</u> makes it clear that the trial judge is to "determine" the prejudicial effect on the jury of any newspaper article published during the trial. Judge Gunn did just that. The state judge in Iowa did nothing. "While we have recommended an individualized inquiry <u>see</u> <u>United States v. Hood</u> . . . a collective inquiry is not a per se abuse of discretion. <u>See</u> <u>Baker</u>, 855 F.2d at 1361 (approving a collective inquiry and noting that the '[t]he district court was in the best position to measure the prejudicial effect, if any, of the article on the jurors')." <u>Id</u>. at 1535. Judge Gunn did that. The state trial judge in Iowa measured nothing, as far as anyone knows. He did not measure the prejudicial effect of the article itself and made no inquiry of the jurors, even collectively.

I fully acknowledge the recent decision in <u>King v. Bowersox</u>, 291 F.3d 539 (8th Cir. 2002), which decided whether Mr. King's constitutional rights were violated when the trial court refused to declare a mistrial after the discovery of hallway photographs. I believe the facts and the issues of law are not the same here. In addition, I frankly have some problems understanding how to reconcile <u>King</u> with <u>Remmer</u>, <u>Hood</u> and <u>Darden</u>. My concern is that other trial judges may have the same difficulty.

I believe we also err in, at least partially, basing affirmance on the fact that the trial judge gave certain jury instructions about avoiding media influence. Every trial judge gives some instructions on not reading, not listening to, and not watching news reports during the trial; this is done on a daily basis. While I agree, of course, that we are not to assume that jurors failed to follow the instructions of the court, I am confident that the trial judge in <u>United States v. Hood</u> gave similar (and I would hope

better) instructions and <u>Hood</u> did not rest on any such basis. In the present case, the Iowa judge told the jurors only to "not consider" media stories. Such an instruction could well be interpreted to mean there was no problem with listening to or reading them as long as jurors did "not consider" them. He did not ever tell them to "not read, not listen to, and not watch" any broadcasts or news stories, the customary such instruction.

I vote to reverse because I believe the Iowa courts' decision as to the Sixth Amendment issue was contrary to and involved an unreasonable application of clearly established federal law as decided by the United States Supreme Court and as previously interpreted by the Eighth Circuit. I would also reverse because I believe the state court decision was based on an unreasonable determination of the facts in light of the lack of evidence presented in the state court proceedings. At a minimum, I would reverse for the district court to conduct a further evidentiary hearing, including hearing from living members of the jury.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-24-